Mary WEAVER, Plaintiff,

v.

**FLORIDA POWER & LIGHT COM-PANY, a Florida corporation, Defendant.**

No. 95–8519–Civil.

United States District Court, S.D. Florida.

April 11, 1997.

Robert A. Sugarman, Sugarman & Susskind, P.A., Coral Gables, FL, Gregg W. Hooth, Hollywood, FL, for plaintiff.

James Scott Bramnick, Carmen Sirkin Johnson, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, Miami, FL, for defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO ENJOIN ARBITRATION PROCEEDING

RYSKAMP, District Judge.

THIS CAUSE came before the Court upon the Defendant's Motion to Enjoin Arbitration Proceeding [DE–73]. The Motion has been fully briefed and is ripe for adjudication.

## I. BACKGROUND

The Plaintiff Mary Weaver ("Weaver"), was discharged as an employee by the Defendant, Florida Power & Light ("FPL"), on April 12, 1995. On August 7, 1995, Weaver filed a cause of action in this Court, and on July 16, 1996, this Court granted FPL's motion for summary judgment on the four Counts that remained: Count I (handicap discrimination in violation of the Florida Civil Rights Act and the federal Americans with Disabilities Act, 41 U.S.C. § 12101 *et seq.*), Count II (sex discrimination in violation of the Florida Civil Rights Act), Count III (retaliation in violation of Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII")), and Count VI (sexual harassment/hostile work environment in violation of Title VII). The Court's Order is now on appeal.

However, while still employed at FPL, Weaver had filed the following grievances pursuant to her union contract:

1. January 3, 1995—"Conflict with Laws and Government Regulations, Paragraph 58: I, Mary Weaver, feel that forcing Par. 7 on me is unwarranted and unjust. It is in conflict with A.D.A. and State and Federal laws. I request that I be reinstated to

my former position or comparable position under the new contract. FPL management (John Stanton, Rick Blomgren, Paul Hederman & Troy Reeves) has forced me to stay at home and collect Workers Compensation payments. This is unnecessary because I can be a productive journey person."

2. January 3, 1995—"Employee Injuries, Paragraph 7: I, Mary Weaver, am in complete disagreement with management (John Stanton, Rick Blomgren, Paul Hederman & Troy Reeves) for issuing me this paragraph. I am very capable of performing my duties as a Power Plant Mechanic, with minimal work restrictions issued to me by a qualified Workman Comp. surgeon and doctor."

3. January 3, 1995—"Union Management Cooperation, Paragraph 14: I, Mary Weaver, request that management (John Stanton, Rick Blomgren, Paul Hederman & Troy Reeves) have a common and sympathetic interest in helping create a harmonious climate by reinstating me as a Power Plant Mechanic or comparable position under the new contract. This would mutually benefit the company and myself."

4. January 3, 1995—"Discrimination and Coercion, Paragraph 11: I, Mary Weaver, request that management (John Stanton, Rick Blomgren, Paul Hederman & Troy Reeves) stop discriminating against me for activities as an Executive Board Member and in the past a Safety Advisor at the GT's. I feel that Mr. Stanton and Blomgren hold a personal vendetta against me for bringing up safety related issues: i.e. gas leaks at the GT's. They have been trying to find reasons to discharge me ever since. The use of Par. 7 was just a way of getting me out of the way. I further request that I be placed back to work as a Mechanic of comparable position under the new contract."

5. January 5, 1995—"Paragraph 59, EEO: I Mary Weaver, request that FP & L Co. and managers (Rick Blomgren, John Stanton, Paul Hederman & Troy Reaves) stop the retaliation action (issuing of Par. 7 MOA and threats of discharge) against me. These actions against me come from an EEO complaint I filed in 1993. I further request that I be placed back to work in my former position or comparable position under the new contract."

Weaver is now pursuing these claims in arbitration through her union, the International Brotherhood of Electrical Workers ("the Union"), and its collective bargaining contract. FPL seeks an injunction against the arbitration proceeding on the grounds that Weaver is barred from bringing these claims by either the doctrine of *res judicata* or the doctrine of waiver.

## II. DISCUSSION

### A. *Alexander* and the Application of the Doctrines of Waiver and *Res Judicata* to Title VII Claims

Weaver vigorously argues that the doctrines of waiver and *res judicata* do not apply to a situation in which a party seeks to vindicate Title VII (42 U.S.C. § 2000e *et seq.*) rights in a federal forum and contractual rights similar to Title VII rights in an arbitration proceeding. In support of this contention, Weaver relies on *Alexander v. Gardner–Denver, Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) and its progeny.

*Alexander*, however, does not support Weaver's contention. In *Alexander*, the Supreme Court was faced with the question of whether an employee's federal claims brought in federal court regarding racial discrimination were barred by the doctrine of election of remedies due to a previous arbitration decision rendered under a nondiscrimination clause of a collective bargaining contract and regarding the same set of facts. *Id.* at 43, 94 S.Ct. at 1017. The Court held that the doctrine of election of remedies did not act to bar the plaintiffs subsequent suit in federal court. *Id.* at 59–60, 94 S.Ct. at 1025.

In reaching this decision, the Court noted that is was "plain that federal courts have been assigned plenary powers to secure compliance with Title VII," that "the private right of action remains an essential means of obtaining judicial enforcement of Title VII," and that Title VII was not the exclusive means by which an employee could vindicate

his rights. *Id.* at 45, 47–49, 94 S.Ct. at 1018–1020. The Court also noted the relationship between the judicial and arbitration forums is "complementary since consideration of the claim by both forums may promote the policies underlying each." *Id.* at 50, 94 S.Ct. at 1021.

Central to the Court's reasoning, however, was the idea of waiver. The Court could not accept the idea that an individual could prospectively waive his Title VII rights, granted to him by Congress, by pursuing his rights in arbitration under a collective bargaining agreement. *Id.* at 51, 94 S.Ct. at 1021. The Court considered arbitration to be "comparatively inferior to judicial processes in the protection of Title VII rights" and arbitrators competent "primarily ... [in] the law of the shop, not the law of the land." *Id.* at 57, 94 S.Ct. at 1024.

That the *Alexander* Court was concerned primarily with waiver is apparent in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) which limited the holding of *Alexander*. In *Gilmer*, the Court was faced with the question of whether a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, could be subject to compulsory arbitration. *Id.* at 21–23, 111 S.Ct. at 1650. The Court held that it could.[1] *Id.* The *Gilmer* Court abandoned the disparaging views of arbitrators found in *Alexander*, and went to great lengths to show that an agreement to arbitrate statutory rights was a choice of forum made in the give and take of bargaining, an agreement that the Court should not upset absent an intention by Congress to preclude such an agreement. *Id.* at 26, 111 S.Ct. at 1652. The *Gilmer* Court distinguished *Alexander* on the grounds (1) that the employees in, *Alexander*

and its progeny had not agreed to litigate their claims through arbitration and that therefore "the arbitration in those cases understandably was held not to preclude subsequent statutory actions," (2) that the collective bargaining agreement was enforced by the union while Title VII rights were enforced by the individual, (3) that the cases were not decided under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, which favors arbitration agreements, and (4) that *Alexander* evidenced a misplaced suspicion of arbitration. *Id.* at 33–35, 111 S.Ct. at 1656–1657.

In the instant case, Weaver pursued her statutory rights before she pursued her rights under the collective bargaining agreement. This is not a mere temporal distinction as Weaver argues. The concern in *Alexander*, as understood by the Court in *Gilmer*, is that Title VII plaintiffs should have their day in court. While *Gilmer* may allow employees to bargain away this right, *Alexander* will still protect those that have not. Weaver, however, does not fall under the aegis of *Alexander*.

Weaver's contention is that she should get two bites at the apple. Weaver maintains that *Alexander* establishes a dual system of enforcement of separate legal rights, one in court to enforce Title VII rights and one in arbitration to enforce contractual rights. While there is broad language in *Alexander* to support this contention, *Gilmer* makes it clear that *Alexander* was about employees unwittingly losing their rights to sue individually under Title VII merely by trying to enforce their contractual rights under a collective bargaining agreement in an "inferior" forum such as arbitration.[2] Weaver did not, however, unwittingly waive her right to bring a Title VII suit. She brought that suit, along

---

1. For a discussion of why *Gilmer* also applies to Title VII claims for sex discrimination and sexual harassment, *see Metz v. Merrill Lynch, Pierce, Fenner & Smith*, 39 F.3d 1482, 1487 (10th Cir. 1994).

2. These concerns about waiver, individual as opposed to collective rights, and the assumed inferiority of arbitration are also the main concerns of *Alexander*'s progeny. *McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 290, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984) ("[A]rbitration ... cannot provide an adequate substitute

for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard"); *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 745, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981) (The Court held that rights under the Fair Labor Standards Act are "independent of the collective bargaining process," "devolve on petitioners as individual workers," "are not waivable," and are "best protected in a judicial rather than in an arbitral forum").

with ADA claims and supplemental state law claims, and had her day in court. None of the concerns in *Alexander* or its progeny regarding the privilege that an individual has to bring a Title VII suit (or any other civil rights suit) in a judicial forum apply to Weaver's case, and the traditional doctrines of preclusion such as waiver and *res judicata* will apply to her attempt now to take FPL to arbitration.

## B. Waiver

■ FPL maintains that Weaver has waived her right to arbitration. Normally, the question of waiver is raised by the plaintiff when the defendant in the judicial action seeks a stay pending arbitration. Weaver's case, then, presents somewhat unique facts in that the judicial action proceeded to judgment, and the plaintiff, unhappy with the outcome, then decided to pursue her contractual remedies through arbitration. It is the defendant, then, who now seeks to protect its interests in the judicial action by asking this Court to issue a stay of arbitration.

■ The unusual position of the parties in this dispute should not bar the application of the general rule that "[a]rbitration should not be compelled when the party who seeks to compel arbitration has waived that right." *Morewitz v. West England,* 62 F.3d 1356, 1365 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 915, 133 L.Ed.2d 845 (1996); *see also, Miller Brewing Co. v. Fort Worth Dist. Co.,* 781 F.2d 494, 496–498 (5th Cir. 1986) (The court held that the plaintiff, who had pursued unsuccessful legal remedies for three and a half years before turning to arbitration, had waived its right to arbitration). "Waiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party." *Morewitz,* 62 F.3d at 1366.

■ Weaver brought her claim to this Court, prosecuted it to final judgment, and now seeks to avoid the result of that judgment by pursuing arbitration under the collective bargaining agreement. Weaver's actions in prosecuting her claim in this Court are entirely inconsistent with an intent to arbitrate, and participation in arbitration now would prejudice FPL by forcing it to defend against the same claims it successfully defended in this Court.[3] Arbitration was designed to alleviate the expense of litigation and provide an alternative, less expensive forum for the resolution of disputes. *See, Id.* It was not designed to provide unhappy litigants with another, perhaps more favorable, forum. Weaver may seek, as she has, relief on appeal. She may not, however, seek relief in arbitration once she has put FPL through the rigors and expenses of litigation. Therefore, the Court holds that Weaver has waived her right to arbitration.

## C. *Res Judicata*

■ FPL also raises as an alternative ground the doctrine of *res judicata,* a doctrine that bars the relitigation of claims that either were raised or could have been raised in the original litigation, i.e. claims that arose out of the same cause of action. *I.A. Durbin, Inc. v. Jefferson Nat. Bank,* 793 F.2d 1541, 1549 (11th Cir.1986). This Court does not have to leave the question of *res judicata* to the arbitration panel, but may decide the question itself. *Kelly v. Merrill Lynch, Pierce, Fenner & Smith,* 985 F.2d 1067, 1069 (11th Cir.1993), *cert. denied,* 510 U.S. 1011, 114 S.Ct. 600, 126 L.Ed.2d 565 (1993). The *res judicata* effect of a prior federal court judgments is a matter of federal law. *Meza v. General Battery Corp.,* 908 F.2d 1262, 1265 (5th Cir.1990).

The four elements required for *res judicata* to bar the arbitration proceeding are: (1) there was a final judgment on the merits, (2) entered by a court of competent jurisdiction, (3) the parties, or those in privity with them, are identical in both suits, and (4) the same cause of action is involved in both cases. *I.A. Durbin,* 793 F.2d at 1549. Weaver maintains that since the rights she seeks to vindicate arise out of a collective bargaining agreement there was no judgment on the merits, the

---

**3.** Although the Court should be mindful of the federal policy favoring arbitration, this policy is irrelevant when the effect of arbitration would be to extend litigation. *See Miller Brewing,* 781 F.2d at 497 n. 3.

parties are not identical, and the same cause of action is not involved in both cases.

The first two portions of this argument misunderstand the doctrine of *res judicata*. First, the Court's entry of summary judgment was a judgment on the merits as to Weaver's claims in this Court, regardless of the source of her claims in the pending arbitration. Second, the Union's claims under the collective bargaining agreement on behalf of Weaver put the Union in privity with Weaver and FPL as to Weaver's individual claims against FPL in the judicial action. The Union's claims arise entirely out of the grievances Weaver filed under the collective bargaining agreement, and any interests the Union has in the reinstatement of Weaver were adequately represented by Weaver in her suit before this Court.

The only disputable issue here, then, is whether Weaver's arbitration claims involve the same cause of action as her suit in this Court. Since no one disputes that Weaver's arbitration grievances arise out of the same set of facts as her Complaint in this Court, the key question is whether the damages provided for in the arbitration agreement could have been sought in this Court. *Miller Brewing*, 781 F.2d at 499.

All five of Weaver's arbitration grievances seek either her reinstatement as a power plant mechanic or her placement in a comparable mechanic's position. *See*, Section I, *supra*. In her Complaint filed with this Court, Weaver sought, *inter alia*, an injunction from this Court barring FPL from discharging her. *Complaint* ¶ 49(b), 35. Such an injunction would have had the same effect as a reinstatement or placement in a comparable position, and the Court would have had the power to issue such an injunction had Weaver prevailed in her case before this Court. 42 U.S.C. § 2000e–5(g); 42 U.S.C. § 12117. Weaver's grievances arose out of the same facts as her complaint in this Court, and she sought through her grievances the

same sort of remedy that she sought in this Court, i.e. reinstatement to her prior position, or placement in a comparable position. Her arbitration grievances, therefore, arise out of the same cause of action as her claim in this Court, and they are barred by the doctrine of *res judicata*.

## D. Stay of Arbitration

The Court has now determined that FPL is entitled to block the pending arbitration under a theory of either waiver or *res judicata*. The only question remaining is whether the Court has the power to enter an injunction blocking the arbitration. Under the All–Writs Act, 28 U.S.C. § 1651, federal courts have the power to issue injunctions to protect their own judgments. *Kelly v. Merrill Lynch*, 985 F.2d at 1069. "This power includes the authority to enjoin arbitration to prevent re-litigation." *Id.*

Weaver maintains, through IBEW System Council U–4's Suggestion of Lack of Jurisdiction filed with this Court, that the Court's power to enjoin labor arbitration is circumscribed by the Norris–LaGuardia Act, 29 U.S.C. § 101.[4] The Norris–LaGuardia Act, however, does not apply to civil actions brought under either Title VII or the ADA. 42 U.S.C. § 2000e–5(h); 42 U.S.C. § 12117. All of Weaver's claims were brought under Title VII, the ADA, or the Florida Civil Rights Act which mirrors Title VII and the ADA. Norris–LaGuardia limitations, therefore, do not apply to this case, and this Court has the power to issue an injunction protecting its judgment.

## III. CONCLUSION

THE COURT has considered the Motion, and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

ORDERED AND ADJUDGED that the Defendant's Motion to Enjoin Arbitration Proceeding [DE–73] be, and the same is hereby, GRANTED. The Plaintiff, Mary

---

4. The International Brotherhood of Electrical Workers, Weaver's union, filed two memorandum of law with this Court. The first was a response to the Motion to Enjoin Arbitration, and the second was this "Suggestion." In neither case did the Union obtain leave of Court to do so as is required by Local Rule 7.1.C. Therefore, the Court will strike both memorandum of law [DE–76, DE–78] from the record. In the interest of a comprehensive adjudication of the issues, however, the Court has considered the Union's arguments on the merits.

Weaver, and anyone acting on her behalf arc hereby PERMANENTLY ENJOINED from proceeding in the arbitration relating to the five grievances the Plaintiff filed from January 3, 1995 to January 5, 1995, or to engage in any other action that encroaches upon this Order or the Final Judgment.